# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

LATA TOMLINSON,

*Plaintiff,*

vs.                                                            Case No. 15-1105-EFM-KGG

OCWEN LOAN SERVICING, LLC,

*Defendant.*

## MEMORANDUM AND ORDER

Plaintiff Lata Tomlinson filed suit against Defendant Ocwen Loan Servicing, LLC ("Ocwen") in the District Court of Sedgwick County, Kansas. Tomlinson alleges four violations of the Kansas Consumer Protection Act ("KCPA").[1] And she seeks a declaratory judgment that she is entitled to certain insurance proceeds. Ocwen timely removed the case to this Court, and now moves to dismiss all five claims for failure to state a claim. For the following reasons, the Court grants in part and denies in part Ocwen's Motion to Dismiss (Doc. 6).

### I.    Factual and Procedural Background

In 2006, Tomlinson purchased real property in Wichita. To do so, she executed a note that was secured by a mortgage on the property. The note required Tomlinson to maintain insurance on the property. On June 27, 2012, U.S. Bank, N.A. ("U.S. Bank") filed a mortgage

---

[1] Kan. Stat. Ann. § 50-623, *et. seq.*

foreclosure suit against Tomlinson.  Ocwen was the loan servicer for U.S. Bank on Tomlinson's note.  U.S. Bank secured a default judgment against Tomlinson on August 6, 2012.  There was a thirteen month gap between the foreclosure judgment and the eventual sale of the property at a sheriff's sale.  During this gap, Tomlinson continued to maintain insurance on the property.  In May 2013, a hail storm damaged the property.  In response to a claim for the damage, Tomlinson's insurance company issued a check for $11,463.67.  The check was made payable to both Tomlinson and Ocwen.

While U.S. Bank was going forward with foreclosure proceedings, Ocwen was corresponding with Tomlinson regarding her loan.  Starting on June 19, 2012, Ocwen began sending Tomlinson offers to test her eligibility for a loan modification under the Home Affordable Modification Program ("HAMP").  From June 2012 until April 2013, Tomlinson received three such offers.  She attempted to take advantage of the offers and submitted multiple applications.  Ultimately, Ocwen informed Tomlinson that she was not eligible for a HAMP modification and did not modify her loan at that time.

But on June 7, 2013, Ocwen sent Tomlinson a shared appreciation offer.  The shared appreciation offer listed two steps for Tomlinson to take advantage of the offer.  She was required to: (1) complete and return the enclosed agreement by the due date; and (2) make two timely payments of $782.45.  The first payment was due on July 1, 2013, and the second payment was due on August 1, 2013.  The enclosed agreement dictated that the loan would automatically be modified on September 1, 2013, if certain other conditions were satisfied.  These other conditions were largely out of Tomlinson's control.[2]  But the offer that preceded the

---

[2] The loan would not automatically be modified unless action was taken by the title insurance company and Ocwen.

attached agreement plainly stated that Tomlinson could take advantage of the modification offer simply by completing the agreement and making the two timely payments.   Tomlinson completed the agreement and made the first payment in June.  She made the second payment in August.  But Ocwen did not modify her loan.  Instead, U.S. Bank purchased the property for $151,234.97 at a sheriff's sale on September 25, 2013.   In February 2014, Ocwen sent Tomlinson a 1099-C, reporting a cancelled debt of $4,996.73.

Tomlinson alleges four violations of the KCPA.  First, she claims that Ocwen committed deceptive acts by sending her loan modification offers with no intent of actually making the modifications.  Second, Tomlinson contends that Ocwen committed a deceptive act by falsely stating that she had rights with regard to the shared appreciation offer.  Third, she claims that Ocwen's issuance of the 1099-C was an unconscionable act because her debt was already settled. Fourth, she alleges Ocwen committed an unconscionable act by soliciting her participation in the modification offers without providing her any material benefit.  In addition to the KCPA claims, Tomlinson seeks a judgment declaring that she is entitled to the proceeds of the insurance check that was issued in response to hail damage to the property.

## II.    Legal Standard

Under Rule 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.  Upon such a motion, the Court must decide "whether the complaint contains enough facts to state a claim to relief that is plausible on its face."[3]  A claim is facially plausible if the plaintiff pleads facts sufficient for the

---

[3] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Court to reasonably infer that the defendant is liable for the alleged misconduct.[4]   The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well as the grounds on which each claim rests.[5]   The Court must accept all of the factual allegations in the complaint as true.[6]   But the Court need not afford such a presumption to legal conclusions.[7]   If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible."[8]

### III.   Analysis

**A.  Tomlinson's Claims under the KCPA**

The KCPA protects consumers from suppliers who commit deceptive and unconscionable practices.[9]   Although some of the claims sound in fraud, KCPA claims need not be pleaded with particularity.[10]   Tomlinson alleges that Ocwen violated the KCPA with conduct that was both deceptive and unconscionable.   She maintains that Ocwen acted deceptively by sending loan modification offers with no intent of following through and by falsely stating that the shared appreciation offer involved consumer rights.   Ocwen acted unconscionably, Tomlinson contends, by issuing a 1099-C form when her debt had already been satisfied and by soliciting her

---

[4] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556) (internal quotation marks omitted).

[5] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008); *see also* Fed. R. Civ. P. 8(a)(2).

[6] *Iqbal*, 556 U.S. at 678-79.

[7] *Id.*

[8] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570) (internal quotation marks omitted).

[9] Kan. Stat. Ann. § 50-623(b).

[10] *See Sanchez v. Bank of Am., N.A.*, 2014 WL 5800203, at *6 (D. Kan. Nov. 7, 2014); *Rogers v. Bank of Am., N.A.*, 2014 WL 3091925, at *3 (D. Kan. July 7, 2014).

participation in a consumer transaction that did not benefit her.  In its motion to dismiss, Ocwen

contends that all four KCPA claims must fail as a matter of law.

1. **Tomlinson fails to allege that Ocwen sent offers between June 2012 and April 2013 without the intent of following through.**

Tomlinson alleges that Ocwen sent her loan modification offers in June 2012 and April

2013 with no intent of following through.  Under § 50-626(b)(5), it is per se deceptive to offer a

service without the intent of providing it.

Ocwen sent Tomlinson several offers between June 2012 and April 2013.  During this

period, U.S. Bank filed a foreclosure action, obtained a default judgment, and was scheduling a

sheriff's sale of the property.  Tomlinson tried to take advantage of the several offers, but her

requests were denied after Ocwen had requested additional paperwork.  Based on all of these

factors, Tomlinson claims that Ocwen made the offers with no intent of actually modifying her

loan.  But the exhibits attached to her petition preclude the Court from finding that such a claim

is plausible.[11]

The "loan modification offers" Tomlinson refers to are not actually offers to modify a

loan.  Instead, they are offers for Tomlinson to apply to see what, if any, mortgage assistance

programs she is eligible to participate in.  Nowhere in these documents does Ocwen promise, or

offer, to modify Tomlinson's loan.  Rather, the letters encourage Tomlinson to apply to find out

what options are available for her to overcome her financial difficulties.  The letters further state

that after Tomlinson applied, Ocwen would review her financial situation to see if she was

eligible for a HAMP modification.  If Tomlinson did not qualify for HAMP, Ocwen would work

---

[11] *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (noting that a court may consider not only the complaint, but also attached exhibits in evaluating a motion to dismiss).

to find another modification or assistance program that worked for her.  In other words, Ocwen offered Tomlinson a financial assessment, not a loan modification.  And Ocwen followed through.  On August 24, 2012, Ocwen sent a letter informing Tomlinson that it had reviewed her application, and she was not eligible for a modification under HAMP.

Tomlinson's own exhibits illustrate the actual details of Ocwen's offer, and the fact that Ocwen completed its end of the deal.  True, Ocwen did not modify Tomlinson's loan.  But Ocwen only offered to review Tomlinson's financial situation in the June 2012 and August 2013 letters.  And Ocwen did just that.  Given these facts, Tomlinson fails to state a plausible claim that Ocwen engaged in deceptive practices regarding the June 2012-April 2013 offers.  The Court grants Ocwen's motion to dismiss these claims.

**2.  Ocwen sufficiently alleges deceptive conduct arising from the shared appreciation offer.**

Under the KCPA, it is per se deceptive to falsely state, "knowingly or with reason to know, that a consumer transaction involves consumer rights, remedies or obligations."[12]  And the solicitation of a loan modification is a consumer transaction under the KCPA.[13]  Tomlinson claims that Ocwen violated § 50-626(b)(8) by falsely stating in the shared appreciation offer that her loan would be modified if she completed the attached agreement and made timely payments.

The comment to § 50-626(b)(8) suggests that this specific subsection was intended for situations in which a supplier makes a false legal representation to a consumer.[14]  In fact, the comment lists two examples of a violation of § 50-626(b)(8): asserting that an installment

---

[12] Kan. Stat. Ann. § 50-626(b)(8).

[13] *Rogers*, 2014 WL 3091925, at *2.

[14] *Rylander v. Motor City, Inc.*, 2011 WL 4031505, at * 7, 259 P.3d 748 (Kan. App. 2011) (unpublished table opinion).

contract must be paid in full irrespective of a defense, or asserting that a supplier can garnish wages that are actually exempt.[15]   Tomlinson's claim is not analogous to either of these examples.   But the KCPA is to be liberally construed in order to protect consumers from deceptive practices.[16]   Here, Tomlinson has stated a plausible claim of deceptive conduct with regards to the shared appreciation offer.   Even if her theory does not perfectly fit under § 50-626(b)(8), Tomlinson's complaint is still sufficient if it appears she is entitled to any form of relief.[17]

Kan. Stat. Ann. § 50-626(a) prohibits a supplier from engaging in deceptive acts or practices, and § 50-626(b) lists several examples of conduct that is deceptive per se.   But the list of examples in § 50-626(b) is not exclusive.[18]   A supplier can still violate § 50-626(a) with conduct that is not precisely analogous to any of the examples of per se deceptive acts.   Whether or not a practice is deceptive is ultimately a question for the jury.[19]

Unlike the June 2012 and August 2013 letters, Ocwen actually offered to modify Tomlinson's loan in the shared appreciation offer.   The shared appreciation offer stated that Ocwen would modify Tomlinson's loan by reducing both the interest rate and the principal amount.   To take advantage of the offer, Tomlinson needed to complete the attached agreement and make two timely payments of $782.45.   There were no additional requirements listed in the

---

[15] Kan. Stat. Ann. § 50-626, comment 2.

[16] *Via Christi Reg'l. Med. Ctr., Inc. v. Reed*, 298 Kan. 503, 519, 314 P.3d 852, 863-64 (2013).

[17] 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §1219, 279-80 (3d ed. 2004) ("[M]any federal courts have held that a complaint is sufficient against a motion to dismiss under Rule 12(b)(6), if it appears from the complaint that the plaintiff may be entitled to any form of relief, even though the particular relief he has demanded and the theory on which he seems to rely are not appropriate."); *see also Turck v. Baker Petrolite Corp.*, 10 F. App'x 756, 762 (10th Cir. 2001).

[18] *Via Christi*, 298 Kan. at 521, 314 P.3d at 865.

[19] *Farrell v. Gen. Motors Corp.*, 249 Kan. 231, 243, 815 P.2d 538, 547.

offer itself.  Tomlinson alleges that she satisfied both requirements.  But her loan was never modified.  This Court has found a plausible claim of deceptive practices under the KCPA in a similar circumstance.[20]

Tomlinson's claim is facially plausible.  A jury could plausibly determine that Ocwen committed a deceptive act under § 50-626 by representing in the shared appreciation offer that it would modify Tomlinson's loan, and then failing to do so after she completed the application and made timely payments.  The Court denies Ocwen's motion to dismiss this claim.

**3.  Tomlinson fails to state a claim of unconscionability with regards to the 1099-C.**

Tomlinson alleges that it was unconscionable for Ocwen to issue her a 1099-C form after her property was sold at a sheriff's sale.[21]  The KCPA prohibits a supplier from engaging in unconscionable acts and practices in relation to a consumer transaction.[22]  This prohibition applies to debt collection practices.[23]  Ocwen contends that Tomlinson fails to state a claim upon which relief can be granted.  The Court agrees.

The KCPA does not define unconscionability, but § 50-627(b)(1)-(7) lists examples of unconscionable conduct.  None of the examples are analogous to Tomlinson's claim, but the statutory list is not exclusive.[24]  So Tomlinson's claim does "not stand or fall based solely on the

---

[20] *Sanchez,* 2014 WL 5800203, at *5 (denying a motion to dismiss a claim of deceptive acts under the KCPA where defendants told plaintiff her loan would be modified once she completed an application).

[21] A 1099-C form reports cancellation of debt income, which may be subject to taxation.  By sending the 1099-C, Ocwen claimed to have cancelled a $4,996.73 debt owed by Tomlinson.  But Tomlinson claims all of her debts related to the mortgage had already been satisfied after the property was sold at the sheriff's sale. Accordingly, Tomlinson contends that it was unconscionable for Ocwen to issue the 1099-C form.

[22] Kan. Stat. Ann. § 50-627(a).

[23] Kan. Stat. Ann. § 50-627, comment 1.

[24] *Louisburg Bldg. & Dev. Co., LLC v. Albright*, 45 Kan. App. 2d 618, 645, 252 P.3d 597, 616 (2011).

presence or absence of these statutory circumstances."[25]  The Kansas Supreme Court identified

ten relevant factors in considering whether conduct is unconscionable.[26]  But those factors

primarily apply to contract practices and are largely unhelpful in determining whether debt

collection practices were unconscionable.[27]  More broadly, a key concern with unconscionability

is an imbalance of power and an abuse of that imbalance.[28]  And unconscionability typically

involves conduct by which a supplier induces a consumer to assume risks that materially exceed

any benefits.[29]  There must be evidence of both deceptive behavior and unequal power between

the parties to show a violation of the KCPA's prohibition of unconscionable conduct.[30]

Tomlinson does not specifically allege unequal bargaining power.  But the Court infers

that she was at a significant bargaining disadvantage.[31]  Still, Tomlinson does not allege, and the

Court cannot reasonably infer, deceptive conduct in the issuing of the 1099-C.  Tomlinson does

not allege that Ocwen mispresented or concealed any facts, willfully or otherwise.[32]  Nor does

---

[25] *Id.*

[26] *State ex rel. Stovall v. DVM Enters., Inc.*, 275 Kan. 243, 251, 62 P.3d 653, 658 (2003) (citing *Wille v. Sw. Bell Tel. Co.*, 219 Kan. 755, 758-59, 549 P.2d 903, 906-07 (1976)).

[27] *Id.* (referring to boilerplate contracts, penalty clauses, execution of a contract, and the like).

[28] *Rogers*, 2014 WL 3091925, at *4.

[29] *State ex rel. Stovall v. ConfiMed.com, LLC*, 272 Kan. 1313, 1318, 38 P.3d 707, 711 (2002).

[30] *Louisburg Bldg. & Dev. Co.*, 45 Kan. App. 2d at 649, 252 P.3d at 618.

[31] 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §1357, 417 (3d. ed. 2004) ("[A]ll reasonable inferences that can be drawn from the pleading are drawn in favor of the pleader.").

[32] *See ConfiMed.com*, 272 Kan. at 1323, 38 P.3d at 714. ("[W]here a record is devoid of any evidence of any deceptive or oppressive practices, overreaching, intentional misstatements, or concealment of facts, there is no claim under the KCPA.") (quoting *Remco Enters., Inc. v. Houston*, 9 Kan. App. 2d 296, 303, 677 P.2d 567, 573 (1984) (internal quotation marks omitted).

she allege that she was misled by Ocwen.[33]  Tomlinson alleges only that Ocwen improperly sent her a 1099-C form after her debt had been satisfied.  Perhaps Ocwen was wrong to issue the 1099-C.  But the 1099-C was not accompanied by any misrepresentations or the concealment of any facts.  This is not deceptive behavior, and under the KCPA, it is not unconscionable.  Because Tomlinson does not allege deceptive behavior with regards to the 1099-C, she fails to plead unconscionable conduct under the KCPA.  The Court grants Ocwen's motion to dismiss this claim.

**4.  Tomlinson sufficiently alleges that Ocwen unconscionably induced her participation in a consumer transaction from which she did not materially benefit.**

Tomlinson also alleges that it was unconscionable for Ocwen to solicit her participation in a consumer transaction from which she did not benefit.  Unlike her 1099-C claim, this claim falls within one of the KCPA's enumerated examples of unconscionable conduct.  Under § 50-627(b)(3), it is unconscionable for a supplier to induce a consumer into a transaction from which she is unable to receive any material benefit.  Here, Tomlinson has sufficiently stated a claim of unconscionable conduct under the KCPA.

Ocwen solicited Tomlinson's participation in the shared appreciation offer.  She completed the agreement and made timely payments, but Ocwen did not modify her loan.  Instead, she lost her property when it was sold at the sheriff's sale.  In short, Ocwen solicited Tomlinson's participation in a transaction from which she received no material benefit.  And given her allegation that she complied with the offer's requirements, it is plausible that a loan

---

[33] *Cf. Schneider v. Citibank, NA,* 2014 WL 219339, at *11 (D. Kan. Jan. 21, 2014) (denying a 12(b)(6) motion on claim of unconscionability under the KCPA) ("Plaintiffs have sufficiently pleaded unequal bargaining power, and that Defendants willfully represented material facts… and that those representations were likely to mislead consumers").

modification was never an actual possibility.[34]   This allegation adequately tracks the statutory

language and the definition of unconscionability under Kansas law.[35]

In addition to tracking the statutory language, there must also be evidence of deceptive

behavior and unequal bargaining power to state a claim of unconscionable conduct.[36]   Again, the

Court infers an imbalance of bargaining power.   And Tomlinson sufficiently alleges deceptive

conduct.   While the July 2012-April 2013 offers were not deceptive, there is a plausible claim of

deceptive behavior with regards to the shared appreciation offer.   It is deceptive for a supplier to

mislead a consumer into believing she will benefit from a transaction.[37]   Based on the shared

appreciation offer, Tomlinson believed Ocwen would modify her loan.   She made two sizeable

payments based on this belief, only to have the property sold at a sheriff's sale.   Tomlinson

contends that the shared appreciation offer was misleading, and she relied on it to her

detriment.[38]   As noted above, Tomlinson has sufficiently pleaded deceptive conduct with regards

to the shared appreciation offer by alleging that Ocwen offered to modify her loan if she

---

[34] *Louisburg Bldg. & Dev. Co.*, 45 Kan. App. 2d at 649, 252 P.3d at 618 ("[50-627(b)(b)] seems aimed at the situation where it is factually impossible for the buyer to derive any benefit from the product or service.").

[35] *ConfiMed*, 272 Kan. at 1321, 38 P.3d at 713 ("[U]nconscionability typically involves conduct by which a supplier seeks to induce or to require a consumer to assume risks which materially exceed the benefits to him.").

[36] *Louisburg Bldg. & Dev. Co.*, 45 Kan. App. 2d at 649, 252 P.3d at 618.

[37] *See Willman v. Ewen*, 230 Kan. 262, 268, 634 P.22 1061, 1065 (1981) (finding unconscionable conduct where a supplier falsely represented that the consumer's order would be filled); *Dodson v. U-Needa Self Storage, LLC*, 32 Kan. App. 2d 1213, 1219, 96 P.3d 667, 672 (2004) (finding deceptive bargaining where a supplier falsely represented that a consumer had exclusive rights to a product).

[38] *Shane v. CitiMortgage, Inc.*, 2012 WL 3111730, at *6 (D. Kan. July 31, 2012) ("Plaintiff has sufficiently alleged unconscionable acts in that Defendant made misleading statements upon which she was likely to rely to her detriment.").

followed instructions, and then failing to do so.[39]   Ocwen's motion to dismiss this claim is denied.

## B.  Tomlinson's Request for a Declaratory Judgment

Tomlinson seeks a judgment declaring that she, and not Ocwen, is entitled to proceeds of the insurance check issued to cover hail damage to the property.  Ocwen moves to dismiss this claim, arguing that Tomlinson fails to state a claim for which relief can be granted.  The Court agrees.

Declaratory relief is limited to correct errors that injuriously affect a party.[40]   And a declaratory judgment is generally not available to a party unless that party has been in some way injured or aggrieved.[41]   Instead, a declaratory judgment is only proper in cases of "actual controversy."[42]  An actual controversy involves the antagonistic assertion and denial of a right.[43]

Tomlinson fails to allege an actual controversy.  She simply alleges that she is entitled to the proceeds of a check that was issued to both her and Ocwen.  An actual controversy involves a right claimed by one party and denied by the other.[44]  And Tomlinson does not allege that Ocwen is claiming any right to the proceeds of the check.  Nor does she allege that she has been wrongly deprived of the proceeds.  In fact, it is unclear from the petition whether Tomlinson, Ocwen, or

---

[39] *See Sanchez*, 2014 WL 5800203, at *5 (finding that plaintiff stated a claim of deceptive conduct) ("[P]laintiff claims that defendants repeatedly told her that her loan would be modified provided she followed their instructions.").

[40] *In re Estate of Keller*, 273 Kan. 981, 984, 46 P.3d 1135, 1137-38 (2002).

[41] *Id.*

[42] *Westar Energy, Inc. v. Wittig*, 44 Kan. App. 2d 182, 195, 235 P.3d 515, 524-25 (2010).

[43] *All. Life Ins. Co. v. Ulysses Volunteer Relief Ass'n*, 215 Kan. 937, 940, 529 P.2d 171, 174 (1974).

[44] *Boeing Airplane Co. v. Board of Comm'rs of Sedgwick Cty.*, 164 Kan. 149, 154, 188 P.2d 429, 433 (1947).

any other party has ever claimed exclusive rights to the check. Without an adversary, there can be no actual controversy.[45]   All Tomlinson alleges is that the check exists and that she is the rightful beneficiary.   Her bare assertion is hardly an allegation of an actual, adversarial controversy.

Tomlinson fails to state a claim for a declaratory judgment because she does not allege an actual controversy.   Accordingly, Ocwen's motion to dismiss the request for a declaratory judgment is granted.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss (Doc.6) is hereby **GRANTED IN PART AND DENIED IN PART.**   Defendant's motion to dismiss is **GRANTED** as to counts I, III, and V of the petition.   In regards to counts II and IV, the motion is **DENIED**.

**IT IS SO ORDERED**.

Dated this 3rd day of December, 2015.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[45] *Keller*, 273 Kan. at 985, 46 P.3d at 1138. ("Absent an adverse party, the question lingers as to whether there is a case or controversy in this action.").