# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

LATA TOMLINSON,

    *Plaintiff,*

vs.

    Case No. 15-01105-EFM-KGG

OCWEN LOAN SERVICING, LLC,

    *Defendant.*

**MEMORANDUM AND ORDER**

Plaintiff Lata Tomlinson filed suit against Defendant Ocwen Loan Servicing, LLC ("Ocwen"), in the District Court of Sedgwick County, Kansas. She originally alleged four violations of the Kansas Consumer Protection Act ("KCPA"),[1] and sought a declaratory judgment regarding insurance proceeds. Ocwen timely removed the case to this Court and filed a motion to dismiss all five claims. The Court granted the motion in part, dismissing all but two of Tomlinson's KCPA claims—Count II (deceptive act) and Count IV (unconscionable act). Ocwen now moves for summary judgment on the two remaining claims. For the following reasons, the Court denies Ocwen's Motion for Summary Judgment (Doc. 58).

---

[1] Kan. Stat. Ann. § 50-623, *et. seq.*

## I. Factual and Procedural Background

In 2006, Tomlinson purchased residential property in Wichita, Kansas. To finance her purchase of the property, Tomlinson executed a promissory note in favor of Ownit Mortgage Solutions, Inc. and a mortgage in favor of Mortgage Electronic Registration Systems, Inc., as the nominee of Ownit Mortgage and its successors and assigns.[2]

Several years after she took out the loan, Tomlinson negotiated a loan modification with the then-servicer of the loan, Litton Loan Servicing, LP. Ocwen became the servicer of Tomlinson's loan effective November 1, 2011. On June 27, 2012, U.S. Bank, N.A.[3] filed a mortgage foreclosure suit against Tomlinson in the Sedgwick County District Court. U.S. Bank took a default judgment against Tomlinson on August 6, 2012.

Shortly before the mortgage foreclosure suit was initiated, on June 16, 2012, Ocwen sent Tomlinson an offer to apply for a loan modification through the Home Affordable Modification Program ("HAMP"). The parties dispute whether Tomlinson completed the HAMP application. On July 6, shortly after the mortgage foreclosure suit was initiated, Ocwen sent Tomlinson another offer to apply for a loan modification through HAMP. Two weeks later, on July 20, Ocwen sent Tomlinson numerous letters stating that it had received her loan modification applications, but further documentation was required to complete the application process. The parties dispute whether Tomlinson actually submitted the requested documentation. Ocwen then

---

[2] Neither the note nor the mortgage required the debt holder to offer Tomlinson a modification of the repayment terms.

[3] U.S. Bank filed the suit as Successor Trustee to Bank of America, N.A. as successor by merger to LaSalle Bank, N.A. as Trustee for Ownit Mortgage Loan Asset Back Certificates, Series 2006–7.

sent Tomlinson two letters stating that she was not eligible for a HAMP modification on August 24, 2012 and June 3, 2013.

But on June 7, 2013, Ocwen sent Tomlinson a Shared Appreciation Modification Offer ("the SAM Offer"). Per the terms of the SAM Offer, Tomlinson had to complete and return the SAM Offer to Ocwen, and pay $782.45 as an initial payment on or before July 1, 2013, and a trial payment of $782.45 on or before August 1, 2013. Section one of the Loan Modification Agreement ("the Agreement") attached to the Offer expressly states that the Loan Documents shall not be modified unless and until: (1) Tomlinson successfully completes the Trial Period, and (2) Tomlinson receives from Ocwen a copy of this agreement signed by Ocwen.

The parties dispute whether the Offer would be "null and void" if Tomlinson failed to send the initial and trial payments on time. The Offer states: "If the payments are made after their due dates or in amounts different from the amount required, your loan *may* not be modified (emphasis added)." However, as Ocwen points out, the Agreement provides: "I acknowledge and agree that if I fail to send any payment on or before the respective due date, the Servicer's modification offer will be null and void and this Agreement will not become effective . . . ."

In her deposition testimony, Tomlinson testified that she "understood" that Ocwen could commence or resume foreclosure proceedings if she failed to comply with the terms of the Agreement. But, as Tomlinson points out, U.S. Bank had already foreclosed on the Property by the time the Offer was made on June 7, 2013. U.S. Bank initiated foreclosure proceedings on June 27, 2012 and took a default judgment against Tomlinson on August 6, 2012.

Tomlinson testified that she signed and executed the Agreement and sent it to Ocwen before the July 1, 2013 deadline. Ocwen maintains it never received a copy. But there is a notation in Ocwen's Comments Log made on July 5, 2013, that states: "Foreclosure sale

postponed for forbearance," because: "[f]ile is on hold for active forbearance plan, as borrower has been approved for SAM modification plan."

The parties dispute whether Tonlinson made the required payments and Ocwen received them. Ocwen cites to an August 19, 2013 entry in its Comments Log for Tomlinson's loan, which states: "[Tomlinson] did not make the first trial payment or down payment required for their SAM modification." But Tomlinson cites to three account statements she received from Ocwen. Tomlinson's June 17 statement indicated that her "current forbearance payment due by 08/01/13" was $782.45. This statement did not indicate a past due forbearance payment. Her July 17 statement indicated the same— her "current forbearance payment due by 08/01/13" was $782.45. And her August 19 statement stated that her current forbearance payment due by 09/01/2013 was $782.45, and that the past due forbearance payment was also $782.45.

The parties agree that Tomlinson never received a signed copy of the SAM Offer from Ocwen, and that Ocwen denied Tomlinson a loan modification under the SAM Offer. Ocwen sent Tomlinson a letter dated August 27, 2013, which indicated that a sheriff's sale of the Property had been scheduled. The Property was sold to U.S. Bank at a sheriff's sale on September 25, 2013 pursuant to the judgment the district court had entered in 2012. Ocwen did not notify Tomlinson that the Offer had been denied until November 2013, over a month after U.S. Bank purchased the property at the sheriff's sale. Ocwen asserts that this delay was due to "coding issues" in Ocwen's system.

## II. Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[4] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[5] The movant bears the initial burden of proof and must show the lack of a genuine issue of material fact and entitlement to judgment as a matter of law.[6] If the movant carries this initial burden, the nonmovant that bears the burden of persuasion at trial may not simply rest on its pleading but must instead "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.[7] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[8] The Court views all evidence and reasonable inferences in the light most favorable to the party opposing summary judgment.[9]

---

[4] Fed. R. Civ. P. 56(a).

[5] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986) ("[A]ll that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.").

[6] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[7] *Id.* (citing Fed. R. Civ. P. 56(e)).

[8] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[9] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

## III. Discussion

The KCPA prohibits both deceptive and unconscionable acts and practices by a supplier in connection with a consumer transaction.[10] Of Tomlinson's two remaining claims, Count II alleges that Ocwen committed a deceptive act, and Count IV alleges that Ocwen committed an unconscionable act. Ocwen now seeks summary judgment on these two claims.

### A. Deceptive Act Claim

Count II alleges a violation of K.S.A. § 50-626(b)(8). Tomlinson claims that Ocwen committed a deceptive act by falsely stating in the SAM Offer that her loan would be modified if she completed the attached agreement and made timely payments. Under this provision, it is per se deceptive to falsely state, "knowingly or with reason to know, that a consumer transaction involves consumer rights, remedies or obligations."[11] And the solicitation of a loan modification is a consumer transaction under the KCPA.[12] Whether or not a practice is deceptive is ultimately a question for the jury.[13] Summary judgment is only appropriate if there is no evidence of deceptive conduct.[14]

The comment to § 50-626(b)(8) suggests that this specific subsection was intended for situations in which a supplier makes a false legal representation to a consumer.[15] In fact, the

---

[10] K.S.A. §§ 50-626(a), 50-627(a).

[11] K.S.A. § 50-626(b)(8).

[12] *Rogers v. Bank of Am., N.A.*, 2014 WL 3091925, at *2 (D. Kan. 2014).

[13] *Farrell v. Gen. Motors Corp.*, 249 Kan. 231, 815 P.2d 538, 547 (1991).

[14] *Mortg. Elec. Registration Sys., Inc. v. Graham*, 44 Kan. App. 2d 547, 247 P.3d 223, 230 (2010).

[15] *Rylander v. Motor City, Inc.*, 2011 WL 4031505, at *7, 259 P.3d 748 (Kan. App. 2011) (unpublished table opinion).

comment lists two examples of conduct in violation of § 50-626(b)(8): asserting that an installment contract must be paid in full irrespective of a defense, or asserting that a supplier can garnish wages that are actually exempt.[16] Obviously, Tomlinson's claim is not analogous to either of those examples. But the list of examples is not exclusive, and the KCPA is to be liberally construed in order to protect consumers from deceptive practices.[17]

With those principles in mind, this Court allowed Tomlinson's claim to proceed when ruling on Ocwen's motion to dismiss, writing:

> Unlike the June 2012 and August 2013 letters, Ocwen actually offered to modify Tomlinson's loan in the shared appreciation offer. The shared appreciation offer stated that Ocwen would modify Tomlinson's loan by reducing both the interest rate and the principal amount. To take advantage of the offer, Tomlinson needed to complete the attached agreement and make two timely payments of $782.45. There were no additional requirements listed in the offer itself. Tomlinson alleges that she satisfied both requirements. But her loan was never modified. This Court has found a plausible claim of deceptive practices under the KCPA in a similar circumstance.
>
> Tomlinson's claim is facially plausible. A jury could plausibly determine that Ocwen committed a deceptive act under § 50-626 by representing in the shared appreciation offer that it would modify Tomlinson's loan, and then failing to do so after she completed the application and made timely payments.[18]

Thus, Tomlinson sufficiently stated a claim, despite the fact that her allegations did not neatly track with the statutory language or comments of § 50-626(b)(8).

Ocwen now argues that Tomlinson must prove three elements: (1) Ocwen offered to modify Tomlinson's loan; (2) Tomlinson satisfied the requirements to accept the SAM Offer; and (3) Ocwen never modified the loan. And, according to Ocwen, it is entitled to summary

---

[16] *Id.* at *8 (quoting K.S.A. § 50-626, comment 2).

[17] *Tomlinson v. Ocwen Loan Servicing, LLC*, 2015 WL 7853957, at *3 (D. Kan. 2015) (citing *Via Christi Reg'l Med. Ctr., Inc. v. Reed*, 298 Kan. 503, 314 P.3d 852, 863–64 (2013)).

[18] *Id.* at *4 (citing *Sanchez v. Bank of America, N.A.*, 2014 WL 5800203, at *5 (D. Kan. 2014)).

judgment because there is no evidence that Tomlinson accepted the SAM Offer. Per the terms of the SAM Offer, acceptance does not occur until after Tomlinson signed the SAM Offer, returned it to Ocwen, paid the initial payment, and paid the trial payment.

However, contrary to Ocwen's claims, there is sufficient evidence to create genuine issues of material fact.[19] Specifically, there are genuine issues regarding whether Tomlinson submitted the SAM Offer and Agreement to Ocwen, and whether Ocwen received any payments from Tomlinson.

To accept the Offer, Tomlinson had to complete and return the Offer to Ocwen, and pay $782.45 as an initial payment on or before July 1, 2013, and a trial payment of $ 782.45 on or before August 1, 2013. On the one hand, Tomlinson has not provided any direct evidence, such as a bank statement, to support her testimony that she completed and returned the SAM Offer to Ocwen and made the required payment before July 1. Furthermore, Ocwen's August 19, 2013 Comments Log entry regarding Tomlinson's loan states: "Borrower did not make the first trial payment or down payment required for their SAM modification." These facts support Ocwen's position that Tomlinson entirely failed to participate in the SAM Offer.

However, there is also a notation from July 5, 2013, that states: "Foreclosure sale postponed for forbearance," and "Reason: File is on hold for active forbearance plan, as borrower has been approved for SAM modification plan." Then, the loan statement Ocwen sent Tomlinson on July 17 provides that her "current forbearance payment due by 08/01/13" was

---

[19] *See Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) (explaining that the substantive law at issue determines which facts are material, and "disputes over facts that might affect the outcome of the suit under the governing law" will preclude the entry of summary judgment); 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2725.2 (4th ed. 2017) (explaining that a genuine dispute exists as long as the "slightest doubt" remains, or the movant is entitled "beyond all doubt").

$782.45—the exact figure quoted in the SAM Offer. This statement did not indicate a past due forbearance payment. Based on these facts, a reasonable juror could conclude that Tomlinson completed the offer, made the $782.45 payment by July 1, and Ocwen modified Tomlinson's loan terms under the SAM Offer.

To be sure, this evidence does not prove that Tomlinson signed the SAM Offer, returned it to Ocwen, paid the initial payment, or paid the trial payment. However, it is sufficient to create genuine issues of material fact, rendering summary judgment inappropriate.[20]

**B.     Unconscionable Act Claim**

In Count IV, Tomlinson alleges that Ocwen committed an unconscionable act when Ocwen induced Tomlinson to participate in its Shared Appreciation Modification Offer and Tomlinson was not able to receive any material benefit from her participation in that Offer. Under K.S.A. § 50-627(b)(3), it is unconscionable for a supplier to induce a consumer into a transaction from which she is unable to receive any material benefit.

When ruling on Ocwen's motion to dismiss, this Court held that Tomlinson sufficiently pleaded a claim for an unconscionable act under the KCPA. This Court wrote:

> Ocwen solicited Tomlinson's participation in the shared appreciation offer. She completed the agreement and made timely payments, but Ocwen did not modify her loan. Instead, she lost her property when it was sold at the sheriff's sale. In short, Ocwen solicited Tomlinson's participation in a transaction from which she received no material benefit. And given her allegation that she complied with the offer's requirements, it is plausible that a loan modification was never an actual possibility. This allegation adequately tracks the statutory language and the definition of unconscionability under Kansas law.[21]

---

[20] *See* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2725.2 (4th ed. 2017) ("When applying the Rule 56(a) standard, the judge cannot summarily try the facts; the judge's role is limited to applying the law to the facts that have been established by the litigants' papers. Therefore, a party moving for summary judgment is not entitled to a judgment merely because the facts the party offers appear more plausible than those tendered in opposition, or because it appears that the adversary is unlikely to prevail at trial.").

[21] *Tomlinson*, 2015 WL 7853957, at *5.

Thus, the issue of whether Tomlinson accepted the SAM Offer is material to her unconscionable act claim as well. As the Court concluded above, Tomlinson presented sufficient evidence for a reasonable juror to conclude that Tomlinson completed the agreement and made timely payments. And it is undisputed that Ocwen did not modify her loan and she shortly thereafter lost her property when it was sold at the sheriff's sale. Accordingly, the Court declines to grant summary judgment on Tomlinson's unconscionable act claim.

### IV. Conclusion

Despite the lack of direct evidence, a reasonable juror could infer from the facts Tomlinson has presented that she signed the agreement, sent her payments, and was approved for loan modification under the terms of the SAM Offer by Ocwen. Because both of Tomlinson's claims are largely dependent upon whether or not Tomlinson did in fact accept the SAM Offer, the Court denies Ocwen's motion for summary judgment.

**IT IS THEREFORE ORDERED** that Defendant Ocwen Loan Servicing, LLC's Motion for Summary Judgment (Doc. 58) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 5th day of September, 2017.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE